UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VINCENT W. MAGUIRE, | ) | No.  CV 04-7952-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On September 28, 2004, Vincent W. Maguire ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for supplemental security income.  On October 19, 2004, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on March 24, 2005, defendant filed an Answer to Complaint.  On June 27, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On September 11, 2002, plaintiff filed an application for supplemental security income. (Administrative Record ["AR"] at 57-60). Plaintiff alleged that, beginning on November 1, 2001, he was unable to work due to back problems. (AR at 15, 64). The Commissioner denied plaintiff's application for benefits, both initially and upon review. (AR at 51, 52-55).

Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 56). On June 5, 2003 and September 10, 2003, the ALJ conducted hearings in Los Angeles, California. (AR at 277-313). Plaintiff appeared at the hearing with his counsel and testified. (AR at 279-89, 292-304). June Hagen, a vocational expert, also testified. (AR at 304-12).

On December 3, 2003, the ALJ issued his decision denying benefits. (AR at 12-22). In his decision, the ALJ concluded that plaintiff suffered from severe impairments, but that these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 20-21). The ALJ also found that plaintiff's alleged limitations regarding his ability to work were not totally credible. (AR at 21). The ALJ concluded that plaintiff retained the residual functional capacity to perform a significant range of light, unskilled work, such as a parking lot attendant. (Id.). Ultimately, the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. (Id.). On December 5, 2003, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 10-11). On September 7, 2004, the Appeals Council affirmed the ALJ's decision. (AR at 4-7).

**PLAINTIFF'S CONTENTION**

Plaintiff claims that the ALJ improperly adduced alternative work that plaintiff could perform.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial

3

gainful activity.  Bowen, 482 U.S. at 140.  At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities.  Id. at 140-41.  Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity.  Id. at 141.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Id.  If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past.  Bowen, 482 U.S. at 141.  If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience.  Id. at 142.  The claimant is entitled to disability benefits only if he is not able to perform such work.  Id.

**B.     Whether the ALJ Properly Adduced Alternative Work**

Plaintiff claims that the ALJ erred in ruling that plaintiff could perform a significant range of light, unskilled work because the ALJ failed to consider all of plaintiff's limitations. Specifically, plaintiff alleges that the ALJ erred by (1) failing to consider all of plaintiff's limitations, (2) rejecting the treating physician's opinion, and (3) rejecting plaintiff's credibility.

**1.     Failure to Consider Plaintiff's Limitations**

Plaintiff faults the ALJ for failing to consider his limitations involving diarrhea, constipation, abdominal pain, diminished range of

motion of the spine, diminished reflexes, abdominal cramping, joint pain, pedal edema, and fluctuating blood pressure. He contends that the ALJ's failure to include these limitations in the hypothetical that he presented to the vocational expert constitutes error. Plaintiff contends that, as a result of the incomplete hypothetical, the vocational expert opined that plaintiff could perform light, unskilled work, such as a parking lot attendant. Plaintiff notes that if the ALJ considered these limitations, namely the excessive diarrhea that requires him to use the restroom frequently, plaintiff would not be capable of performing the work of a parking lot attendant.

At the hearing, the ALJ posed the following hypothetical to the vocational expert:

> ALJ: Okay. Hypothetical number two: 48 years old; high school education; light work; no climbing, balancing, stooping, kneeling, crouching, crawling – none. He would have to have the sit/stand option. Since it's at light, they – he would not be able to do his past relevant work with those limitations. Would there be other work that he could perform?
>
> VE: Yes, at the light level, for example, parking attendant jobs, some fit into the category. That's DOT number 915.473-010; unskilled; SVT [sic] two. That's about 8,000, locally; and for sit/stand, reduces to about half, about 4,000.

(AR at 307-08). Thereafter, plaintiff's attorney inquired about possible work for a person with the same limitations posed in the

5

1  hypothetical, but with the additional limitations of being unable to
2  drive because of medication and requiring ready access to restroom
3  facilities.  (AR at 309).  The vocational expert responded that a
4  person with those limitations could not perform the job of a parking
5  attendant, but could perform assembly jobs where there was ready
6  access and a sit/stand option, such as the job of a silver wrapper.
7  (Id.).  Thus, the vocational expert ultimately found that plaintiff
8  could perform the light, unskilled work of a parking lot attendant or,
9  alternatively, if plaintiff needed ready access to the restroom, he
10 could work as an assembler (AR at 20).[1]

11      In order for a vocational expert's testimony to constitute
12 substantial evidence, the hypothetical question posed must "consider
13 all of the claimant's limitations."  Andrews, 53 F.3d at 1044.  While
14 the ALJ need not include every alleged impairment in the hypothetical,
15 he must make specific findings explaining his rationale for
16 disbelieving any subjective complaints that are not included.
17 Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Gallant v.
18 Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

19      Here, the third hypothetical that the ALJ presented to the
20 vocational expert included the limitation that plaintiff have ready
21 access to bathroom facilities.  (AR at 309).  This limitation, in
22 addition to the limitation that plaintiff not engage in climbing,
23 balancing, stooping, kneeling, and crawling, was sufficient to address
24 plaintiff's concerns of ready access to the bathroom and diminished
25 ///

---

[1] Contrary to plaintiff's contentions, the ALJ did not limit
potential jobs to only that of a parking lot attendant, but
instead referenced that job as an example of light, unskilled
work that plaintiff could perform.  (AR at 21).

range of motion. Consequently, the hypothetical that the ALJ presented to the vocational expert was sufficiently complete.

### 2. The ALJ's Consideration of Plaintiff's Treating Physician's Opinion

Plaintiff contends that the ALJ failed to give weight to the opinion of plaintiff's treating physician. In particular, plaintiff complains that the ALJ rejected the opinion of "Dr. Shelton." (Joint Stip. at 9). The ALJ relied on the opinions of Harlan Bleecker, M.D., a consultative examiner, and the State Agency medical consultant. Plaintiff claims that the ALJ's failure to give greater weight to his treating physician's opinion constitutes error.

Although plaintiff references "Dr. Shelton" as one of his treating physicians, the Administrative Record filed with the Court contains no medical records prepared by a "Dr. Shelton," and plaintiff fails to cite to such records.[2] Plaintiff submitted medical records chronicling his medical care from October 6, 1999 to August 19, 2003. (AR at 95-213, 232-269). But, as the ALJ noted, none of the treating records contain an assessment of plaintiff's functional limitations. Dr. Bleecker and the State Agency consultant, Alda Racalde, M.D., were the only physicians who assessed specific limitations regarding plaintiff's ability to work. (AR at 18). The records indicate that plaintiff was treated for chronic back pain, hypertension, pulmonary disease, ulcers, diarrhea, constipation, and abdominal pain. (AR at 16). Plaintiff also underwent laminectomies, colonoscopies, and a cholecystectomy. (AR at 95-213, 232-269). But "[t]he mere existence

---

[2] In fact, plaintiff's citation to "TR 14" in the Joint Stipulation does not appear to refer to a relevant page in the Administrative Record.

of an impairment is insufficient proof of disability. 'A claimant bears the burden of proving that an impairment is disabling.'" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)(quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)(internal cite omitted).

The only references to plaintiff's functional limitations regarding his ability to work were made by Darrell C. Brett, M.D., who treated plaintiff for his back pain. On January 19, 2000, Dr. Brett stated that "with further improvement [plaintiff] will be able to return to light work over the next 4-6 weeks, and he will be reassessed in early March, 2000." (AR at 155). One year later, on March 31, 2000, Dr. Brett found that plaintiff could return to his work as a chef, and stated that he should not lift or carry more than 50 pounds. Dr. Brett also noted at that time that plaintiff's prognosis was excellent. (AR at 155). In early 2001, plaintiff suffered a slip and fall accident, at which time Dr. Brett suspected plaintiff had lumbar strain with possible aggravation of his radiculitis. Plaintiff was instructed to use modified bed rest and to not lift or carry more than 10 pounds. (AR at 151). By March 2001, Dr. Brett noted that he expected plaintiff to return to his baseline status with further time and healing. (AR at 150).

On October 22, 2002, plaintiff received a Complete Orthopedic Evaluation from H. Harlan Bleeker, M.D. (AR at 214-17). Dr. Bleeker found that plaintiff suffered from degenerative arthritis, old compartment syndrome to his right forearm, and degenerative disc disease of the lumbar spine. (AR at 216). Dr. Bleeker concluded that:

> The patient can occasionally lift 25 pounds, frequently 10 pounds, sit, stand and walk six out

8

>     of eight hours.  He can only occasionally lift
>     with his left upper extremity with no
>     restrictions in his lower extremities.

(AR at 217).

On November 22, 2002, a State Agency medical consultant, Aida L. Racalde, M.D., also assessed plaintiff's residual functional capacity. (AR at 219-66).  Dr. Racalde found no manipulative, visual, communicative, or environmental limitations.  (AR at 222-23).  Dr. Racalde, however, assessed postural limitations, limiting plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  (AR at 221).  As for exertional limitations, Dr. Racalde opined that plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of six hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, and push and/or pull without limitation.  (AR at 220).

An ALJ should place greater weight on a treating physician's opinion than that of an examining or non-examining physician.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)("It is clear that more weight is given to a treating physician's opinion than to the opinion of a non-treating physician because a treating physician 'is employed to cure and has a greater opportunity to know and observe the patient as an individual.'")(quoting Magallenes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); see also Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Andrews, 53 F.2d at 1041.  The proper weight that the ALJ should place on a treating physician's

opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record. See 20 C.F.R. §§ 404.1527, 416. 927. Here, no treating physician offered a complete functional assessment regarding plaintiff's disabled status. Furthermore, to the extent Dr. Brett, one of plaintiff's treating physicians opined about plaintiff's condition, his findings were consistent with those of Dr. Bleeker and Dr. Racalde.

An ALJ may obtain the opinion of a consultative examiner if the ALJ determines that "information [he] need[s] is not readily available from the records of [the claimant's] medical treatment source, or [he is] unable to seek clarification from [the claimant's] medical source." 20 C.F.R. 416.912(f). The report of a consultative physician called in by the Commissioner may serve as substantial evidence in support of a disability determination. Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989); see also Stumpe v. Shalala, 1995 WL 7853, at *3 (N.D. Cal. Jan. 3, 1995) ("Since [the examining physician's] opinion was consistent with the medical evidence of record, it constituted substantial evidence supporting the ALJ's decision.").

Here, plaintiff contends that the ALJ disregarded the opinion or records of his treating physician in favor of the opinions of the consultative examiner and the State Agency medical consultant. But, as discussed above, plaintiff has not shown that any treating physician assessed plaintiff's limitations in a manner that was inconsistent with the opinions of Dr. Bleecker or Dr. Racalde. Thus, the Commissioner properly relied on these opinions.

///
///

### 3. Rejection of Plaintiff's Credibility

Plaintiff also objects to the ALJ's determination that plaintiff's testimony regarding his alleged functional limitations were only partially credible. In his decision, the ALJ cited to plaintiff's failure to report these limitations to his physicians, plaintiff's ability to carry out his daily activities, and the lack of objective medical evidence. (AR at 18). In his appeal, plaintiff specifically objects to the ALJ's credibility determination based on a lack of objective evidence and his ability to carry out activities of daily living.

#### a. Lack of Objective Findings

At the hearing, plaintiff testified that he stopped working due to the lifting that was involved in his job and having to be on his feet. Plaintiff also had problems with his stomach. (AR at 295). Plaintiff claimed that his swollen feet limited his ability to stand because his back would "seize up," which caused numbness in his groin and legs. (AR at 300-02). As a result of his gastrointestinal problems, plaintiff testified that he needed to use the restroom for his diarrhea approximately 20 to 30 times per day and that he could not predict when he would need to use the restroom. (AR at 298-99). Plaintiff further testified that the side effects of medication made him lightheaded, dizzy, and fatigued. (AR at 299-300).

While the ALJ found plaintiff's allegations of back pain and intermittent bouts of diarrhea and constipation to be credible, he ruled that there was "no evidence to support the severity of symptoms alleged by the claimant." (AR at 18). First, with respect to plaintiff's back pain, the ALJ noted that treatment records referred to a complete resolution of right lower extremity radiculopathy. (AR

11

at 18). The ALJ also noted that plaintiff's reports of gastrointestinal problems were "few and far between" and that records indicate that he reported diarrhea 30 times a day on only one occasion. (AR at 18). Finally, the ALJ cited to the lack of any significant loss of weight or anemia related to bloody stools. (Id.).

An ALJ cannot rely on an absence of disability findings to reject a claimant's credibility. A claimant need not produce evidence of pain other than his own subjective testimony. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof."). Nor must a claimant present objective medical evidence of a causal relationship between the impairment and the type of symptom. See id.; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain."). Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotations omitted). This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," Smolen, 80 F.3d at 1282, such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." Id. (internal quotations omitted).

Thus, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."

SSR 96-7p. Instead, a claimant must demonstrate only two things: "(1) [he] must produce objective medical evidence of an impairment or impairments; and (2) [he] must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." Smolen, 80 F.3d at 1282; see also SSR 96-3p.

Here, the ALJ erred in citing a purported lack of medical evidence to substantiate plaintiff's allegations of pain and functional limitations. Even taking the ALJ's statement as true, it does not undermine plaintiff's testimony because plaintiff produced "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991). Indeed, the ALJ simultaneously acknowledged plaintiff's underlying impairments as credible while rejecting plaintiff's testimony regarding the severity of his pain -

> Whereas the claimant's allegations of back pain and intermittent bouts of diarrhea/constipation related to the side effects of pain medications and a history of abdominal surgeries are credible, there is no evidence to support the degree of severity of symptoms alleged by the claimant.

(AR at 18). Thus, the ALJ clearly found that plaintiff had produced evidence of underlying impairments. In fact, the ALJ wrote that "[t]he record establishes that the claimant has had chronic back pain dating back to 1987." (Id.). With respect to plaintiff's stomach problems, the ALJ noted, "The record establishes that the claimant

13

also experiences occasional bouts of diarrhea, constipation, or abdominal pain status post multiple abdominal surgeries, including colonoscopies with polypectomies in 1988 and 1999 and a cholecystectomy with inguinal hernia repair in 2001." (Id.). But the ALJ improperly found, however, that the established impairments could not reasonably be expected to produce the severity of pain and symptoms to which plaintiff testified. Given the nature of the impairments as adopted by the ALJ, it was not unreasonable for plaintiff to suffer from the type and severity of symptoms to which he testified.

**b. Daily Activities**

The ALJ further determined that plaintiff's ability to carry on with activities of daily living rendered his claims of disability not credible. (AR at 18). Specifically, the ALJ noted plaintiff's ability to "go for walks, shop, do light household chores, run errands such as going to the post office or store without assistance, care for personal hygiene, and cook meals." (Id.).

In evaluating a claimant's credibility, an ALJ must consider the factors that Social Security Regulation 95-5p sets forth. Those factors include the claimant's daily activities and the adjudicator's personal observation of the claimant. See SSR 95-5p. "With respect to daily activities, this court has held that if a claimant 'is able to spend a substantial part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (emphasis in original) (citing Morgan, 169 F.3d at 600); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

14

1989).  In Fair, however, the Ninth Circuit cautioned that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  Fair, 885 F.2d at 603.

Here, plaintiff did not engage in any daily activities that supported the ALJ's decision to reject plaintiff's credibility. Taking walks, shopping, doing light household chores, running short errands, caring for personal hygiene, and cooking meals do not constitute a substantial part of the day and are not transferable to a work setting.  See Vertigan, 260 F.3d at 1049; see also Morgan, 169 F.3d at 600; Fair, 885 F.2d at 603.  The Ninth Circuit has found that some of the same activities, namely grocery shopping, driving a car, or limited walking for exercise, do not "in any way detract from [a claimant's] credibility as to [his] overall disability."  Vertigan, 260 F.3d at 1050; see also Howard v. Hecklar, 782 F.2d 1484, 1488 (9th Cir. 1986) (claim of pain-induced disability not gainsaid by capacity to engage in periodic travel); Gallant v. Hecklar, 753 F.2d 1450, 1453 (9th Cir. 1984) (ordering award of benefits for constant back and leg pain despite claimant's ability to cook meals and wash dishes).  The Ninth Circuit has repeatedly stated that a claimant need not be utterly incapacitated in order to be disabled.  See Fair, 885 F.2d at 603 ("The Social Security Act does not require that claimant be utterly incapacitated to be eligible for benefits."); see also Vertigan, 260 F.3d at 1050 ("One does not need to be utterly incapacitated in order to be disabled.").  As such, substantial evidence does not exist to support the ALJ's finding that plaintiff's daily activities rendered his testimony not credible or only partially credible.

**C.     Remand is Required to Remedy the Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. <u>McAlister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy the defects in the ALJ's decision, and where the record should be developed more fully. <u>McAlister</u>, 888 F.2d at 603; <u>Rodriquez v. Bowen</u>, 876 F.2d 759, 763 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>see</u> <u>Gamble v. Chater</u>, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, <u>see</u> <u>Schneider v. Commissioner of the Social Security Administration</u>, 223 F.3d 968, 976 (9th Cir. 2000); <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. <u>See</u> <u>Smolen</u>, 80 F.3d at 1292.

Here, the Court finds remand appropriate. The ALJ erred in finding that plaintiff's testimony regarding his subjective complaints lacked credibility. On remand, the ALJ must provide clear and convincing reasons for rejecting plaintiff's credibility.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: September 29, 2005

/s/Jennifer T. Lum
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE